**Opinion filed September 29, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00342-CR

_____

**BRIAN SWEARENGIN, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No. B-34,061**

### O P I N I O N

The jury convicted Brian Swearengin of capital murder and assessed his punishment at confinement for life without parole. We affirm.

Appellant brings three issues on appeal. In his first two issues, appellant contends that the trial court erred when it overruled appellant's challenges for cause against two venirepersons. He argues in his third issue that the trial court erred when it submitted a jury charge in which it did not provide for a unanimous finding of the underlying offense to the capital murder. Appellant has not challenged the sufficiency of the evidence.

During voir dire, appellant's counsel asked the members of the jury panel what they believed a defendant's obligation was after the State had presented its evidence. Several venirepersons gave varying responses as to what they thought a defendant was required to do during trial. The trial court spoke individually with a number of the venirepersons regarding their responses. Appellant exercised challenges for cause against several of those venirepersons. On appeal, he complains that the trial court erred when it denied challenges against Venireperson Armendariz and Venireperson McCarter. The following exchanges took place between appellant's counsels, the trial court, the State, and the two venirepersons:

> THE COURT: Okay. Mr. Armendariz, someone has a question.
>
> [DEFENSE COUNSEL 1]: Judge, I think Mr. Armendariz -- and don't let me put words in your mouth. But the way I understood it was that you would want some evidence put on by the Defense; is that correct?
>
> [VENIREPERSON NO. 4]: Yes, sir.
>
> [DEFENSE COUNSEL 1]: And that is a firm belief you are going to require it in any case?
>
> [VENIREPERSON NO. 4]: Well, not in any case, but particularly this case, it is [a] murder case.
>
> [DEFENSE COUNSEL 2]: Okay. In an important case?
>
> [DEFENSE COUNSEL 1]: In an important case.
>
> [PROSECUTOR]: Can I ask a question? If the State doesn't prove its case beyond a reasonable doubt, and the Defense doesn't put on anything, are you going to require anything of the Defense?
>
> [VENIREPERSON NO. 4]: Can you repeat that?
>
> [PROSECUTOR]: If the State doesn't meet its burden and doesn't prove its case beyond a reasonable doubt, you wouldn't -- would you require anything from the Defense –
>
> [DEFENSE COUNSEL 1]: Judge, I really think that is another issue.
>
> [PROSECUTOR]: No.
>
> [DEFENSE COUNSEL 1]: What he is talking about is --

2

[PROSECUTOR]: Can he answer the question?

[DEFENSE COUNSEL 1]: What he is talking about is --

THE COURT: What?

[DEFENSE COUNSEL 1]: -- Mr. Armendariz's statement was that he would require -- if the State put on a case, he would require some evidence from the Defense.

THE COURT: Is there anything I can say, Mr. Armendariz, that would get you to change your mind about that? And I will tell you, the Defendant has no obligation at all to put on any evidence. If I tell you that, would that make you rethink . . . your position?

[VENIREPERSON NO. 4]: It would.

THE COURT: All right. So then if the State puts on a case, and the State, in your mind, did not prove its case, you would not require the Defendant to defend himself?

[VENIREPERSON NO. 4]: Huh-uh.

. . . .

THE COURT: Mr. McCarter.

[DEFENSE COUNSEL]: Mr. McCarter, I have got a lot going on up here.

[VENIREPERSON NO. 14]: I understand.

[DEFENSE COUNSEL]: A lot of moving parts. As I understand it, and what you were stating was that you would want some evidence put on by the Defense, is that a correct statement of what your understanding was?

[VENIREPERSON NO. 14]: That is right.

[DEFENSE COUNSEL]: And the State's case might be strong, it might be weak, but you would still want to hear from the Defense, and want to hear some evidence?

[VENIREPERSON NO. 14]: Something, yes.

[DEFENSE COUNSEL]: All right. In the case?

[VENIREPERSON NO. 14]: Yes.

[PROSECUTOR]:  In any case?

[DEFENSE COUNSEL]:  In any case?

[VENIREPERSON NO. 14]:  Yes.

[PROSECUTOR]:  However you understand the State has the burden of proof, right?

[VENIREPERSON NO. 14]:  Right.

[PROSECUTOR]:  And if the State fails to meet its burden, you will vote, when you vote, not guilty?

[VENIREPERSON NO. 14]:  Yes.

[PROSECUTOR]:  Even if the Defense doesn't put on anything?

[VENIREPERSON NO. 14]:  Yes, I will.

[PROSECUTOR]:  So they can do nothing.  And if we don't prove our case --

[VENIREPERSON NO. 14]:  If the State doesn't prove their case, then I would vote not guilty.

[PROSECUTOR]:  You were to say earlier preference that you would like to hear.  But obviously if we don't prove our burden, they don't have to do anything; is that correct?

[VENIREPERSON NO. 14]:  No, that is true.  They don't have to do anything.

[PROSECUTOR]:  And you wouldn't hold them to that; is that correct?

[VENIREPERSON NO. 14]:  Yes.

Appellant's challenges were based on Venireperson Armendariz's and Venireperson McCarter's statements regarding a defendant's obligation to present evidence.  The trial court overruled both challenges.  The State agrees that appellant properly preserved the claimed errors.  *See Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002) (error is preserved on denied challenges for cause when an appellant establishes five specific requirements on the record).

4

When we review a trial court's decision to grant or deny a challenge for cause, we look at the entire record to determine whether there is sufficient evidence to support the trial court's ruling. *Id.* Before venirepersons may be excused for cause, the law must be explained to them, and they must be asked whether they can follow that law regardless of their personal views. *Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009). The proponent of a challenge for cause has the burden of establishing that the challenge is proper. *Id.* The proponent does not meet this burden until the proponent shows that the venireperson understood the requirements of the law and could not overcome his prejudice well enough to follow the law. *Id.*

We review a trial court's ruling on a challenge for cause with considerable deference because the trial court is in the best position to evaluate a venireperson's demeanor and responses. *Id.* at 295-96. When a venireperson's answers are vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision. *Id.* at 295. We reverse a trial court's ruling on a challenge for cause only if a clear abuse of discretion is evident. *Id.* at 296.

Here, the trial court asked Venireperson Armendariz whether the law would change his personal feelings about a defendant's obligations during trial. Venireperson Armendariz responded that it would change his personal opinion. The trial court then asked, "So then if the State puts on a case, and the State, in your mind, did not prove its case, you would not require the Defendant to defend himself?" Venireperson Armendariz responded, "Huh-uh." Appellant failed to show that Venireperson Armendariz understood the requirements of the law and yet could not overcome his personal feelings in order to follow the law; the record as a whole shows the opposite. The trial court did not abuse its discretion when it overruled appellant's challenge for cause against Venireperson Armendariz.

For the same reason, the trial court did not err when it overruled appellant's challenge for cause against Venireperson McCarter. After the State explained the law to him, Venireperson McCarter stated that, even though he originally stated that his personal preference was for a defendant to put on some evidence, he would not require a defendant to do anything if the State did not prove its case. Appellant failed to show that the challenge was proper. The trial court did not abuse its discretion when it overruled appellant's challenge to Venireperson McCarter. We overrule appellant's first and second issues.

Appellant contends in his third issue that the trial court erred when it submitted a jury charge in which it allowed the jury to convict him of capital murder if the jury found that he committed any of the underlying offenses of aggravated sexual assault, robbery, or burglary of habitation. Specifically, appellant argues that he had the right to require a unanimous verdict as to which underlying offense the jury believed he committed. He claims that, when the trial court allowed different jurors to determine that he committed different underlying offenses, he was deprived of that right. Appellant also complains that the prosecutor's final argument was improper because the prosecutor further explained that the jurors were not required to unanimously decide which underlying offense appellant committed. We disagree.

As opposed to instructing a jury on two separate offenses involving separate criminal statutes, the unanimity requirement is not violated when a trial court instructs the jury on alternative theories of committing an underlying offense in a capital murder case. *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004); *Kitchens v. State*, 823 S.W.2d 256, 257-58 (Tex. Crim. App. 1991). In *Martinez*, the jury charge permitted the jurors to find that Martinez committed either of two underlying offenses: robbery or aggravated sexual assault. 129 S.W.3d at 103. The court, relying on *Kitchens*, found the jury charge to be proper, as well as the State's jury argument to the effect that the jurors need not agree on which underlying offense Martinez committed. *Id.*

Here, the jury charge tracked the language of the indictment: "[Appellant] was then and there in the course of committing or attempting to commit the offense of aggravated sexual assault or robbery . . . or burglary of a habitation." Although the State alleged in the indictment that appellant committed the different underlying offenses in the conjunctive, it was proper for the jury to be charged in the disjunctive. *See Kitchens*, 823 S.W.2d at 258.

Appellant concedes that this is the settled law in Texas, but he argues that a non-unanimous finding of an underlying offense violates two United States Supreme Court decisions: *Apprendi v. New* Jersey, 530 U.S. 466 (2000), and *Ring v.* Arizona, 536 U.S. 584 (2002). We do not find the applicable law in Texas to be in conflict with either case.

In *Apprendi*, the Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. While appellant is correct when he states that the commitment of an underlying offense must be unanimously found

6

beyond a reasonable doubt before a defendant can be convicted of capital murder, he is not correct in relying on *Apprendi* for the position that alternative means of committing an underlying offense must be unanimously found by the jury. The applicable statute in *Apprendi* allowed the defendant to be punished for a first degree felony if he was found guilty of a second degree felony and then further found guilty of a hate crime by a preponderance of the evidence. *Id.* at 491-92. Here, that is not the case. The trial court required the jury to find appellant guilty of the underlying offense beyond a reasonable doubt.

Under Section 19.03(a)(2) of the Texas Penal Code, a person commits capital murder if "the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, or terroristic threat." TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 2011). Each of the seven offenses listed are different means by which capital murder may be committed. Submitting alternative theories on the underlying offense committed does not violate the unanimity requirement. *Martinez*, 129 S.W.3d at 103.

In *Ring*, the Court held that the defendant's Sixth Amendment right to a jury trial was violated when the trial judge, sitting alone, determined whether aggravating factors required for imposition of the death penalty were present. *Ring*, 536 U.S. at 609. *Ring* is not applicable here because the jury, not the judge, determined that appellant committed the underlying offense required for the capital murder conviction; the Sixth Amendment right to a jury trial was not violated. We overrule appellant's third issue.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


September 29, 2011

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.